THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* HARRISON JOHN, Defendant.

County Court, Erie County, October 20, 1943.

*James E. Bixby* for defendant.

*Robert E. Congdon* for plaintiff.

WARD, J. This is a motion by the defendant for an order to modify a sentence of a justice of the peace in this county to the extent that no further payments should be made subsequent to March 9, 1943, by the defendant Harrison John, to his wife Edna John; releasing said defendant from probation; and restraining any further action upon such order as modified.

The defendant, a member of the Seneca Nation of Indians residing on the Cattaraugus Reservation, married Edna John in October, 1924. They lived together as husband and wife upon the Cattaraugus Reservation until April, 1942, when they separated. Sometime in November, 1942, the defendant was arrested upon the complaint of his wife, under section 899 of the Code of Criminal Procedure, for nonsupport, and after a trial on November 21, 1942, before a justice of the peace, he was found guilty, directed to pay five dollars weekly to his wife and placed on probation to guarantee such payment. Thereafter, the defendant brought an action for separation (limited divorce) against his wife before the Seneca Nation of Indians, Cattaraugus Indian Reservation, Peacemakers' Court, which rendered a judgment in his favor dated March 9, 1943, whereby it was " ordered, adjudged and decreed that the defendant, Edna John, the wife of the plaintiff, be forever separated from the bed and board of her husband, the plaintiff, Harrison John, and that said plaintiff be and he hereby is relieved from further obligation for her support and maintenance."

Counsel for the wife argues, without citing any authorities except section 899 of the Code of Criminal Procedure, that " This is an extremely important case," and it will set a precedent and that the Peacemakers' Court of the Seneca Nation of Indians is limited in its jurisdiction to the Reservation.

The Indian Law (L. 1909, ch. 31) is an act relating to Indians, constituting chapter 26 of the Consolidated Laws. It is a collection of special statutes relating to the several tribes of Indians remaining in this State. (Report of Board of Statutory Consolidation, June 26, 1907.)

Section 3 of the Indian Law, entitled *Marriage and divorce,* provides in part: " The laws of the state relating to the capacity to contract marriage, the solemnization of marriage, the annulment of the marriage contract, and divorce, are applicable to Indians; and subject to the jurisdiction of the

peacemakers' courts of the Seneca nation to grant divorces, the same courts shall have jurisdiction of actions arising thereunder as if such Indians were citizens."

Section 46 of the Indian Law, entitled *Peacemakers' courts,* provides in part: "A peacemakers' court of the Allegany or Cattaraugus reservation shall also have exclusive jurisdiction to grant divorces between Indians residing on such reservation * * *."

Section 5 of the Indian Law, entitled *Actions in state courts,* provides: "Any demand or right of action, jurisdiction of which is not conferred upon a peacemakers' court, may be prosecuted and enforced in any court of the state, the same as if all the parties thereto were citizens."

Thus, the Peacemakers' Court of the Cattaraugus Reservation has exclusive jurisdiction to grant a divorce between two resident Indians. But does that include a limited divorce or separation?

Divorce is the legal separation of husband and wife, effected, for cause, by the judgment of a proper court, and either totally dissolving the marriage relation or suspending its effects so far as concerns the cohabitation of the parties. (Black's Law Dictionary.) The term "divorce", as applied in America, is used in cases of divorce *a mensa* or *a vinculo.* A divorce *a mensa et thoro* (from table and bed) is "A partial or qualified divorce, by which the parties are separated and forbidden to live or cohabit together, without affecting the marriage itself." (Black's Law Dictionary.) A divorce *a vinculo matrimonii* (from the bond of marriage) is "A total divorce of husband and wife, dissolving the marriage tie, and releasing the parties wholly from their matrimonial obligations."

Therefore, it appears that the term "divorce", as used in sections 3 and 46 of the Indian Law, includes a limited divorce or separation. (Compare articles 68 and 69, especially sections 1147 and 1161, of the Civil Practice Act.)

The effect of this judgment of limited divorce upon the conviction of the defendant as a "disorderly person" becomes clear by the application of the rules enunciated by the Court of Appeals in *People* v. *Schenkel* (258 N. Y. 224) and *People* v. *Jansen* (264 N. Y. 364), the opinions of which were written by Judge LEHMAN, all judges concurring.

In the *Schenkel* case, upon the complaint of his wife, the defendant was adjudged a "disorderly person" as defined by subdivision 1 of section 899 of the Code of Criminal Procedure, for nonsupport. The parties separated without a judgment of

separation having been rendered defining their respective rights and duties. Judge LEHMAN said, at page 226: " The husband's obligation of support continues as long as the marriage relation is not dissolved or limited by a decree of divorce or separation. It ceases when such a decree is made, except as otherwise provided in the decree." Since there was no decree of divorce or separation, the conviction was affirmed.

The *Schenkel* case was distinguished in the *Jansen* case (*supra*), in which the defendant was convicted upon a charge of nonsupport of his wife in violation of section 74 of the Inferior Criminal Courts Act. (L. 1910, ch. 659; amd. L. 1930, ch. 434; now New York City Criminal Courts Act, § 74.) He had been sentenced to pay five dollars weekly for the support of his wife. In his defense, the defendant introduced a judgment of the Supreme Court for separation in his favor and against his wife. Judge LEHMAN stated the question upon this appeal thus: " * * * whether a husband *in whose favor* a decree of separation has been granted violates the statute and becomes a disorderly person by failure to support his wife, whereby she is in danger of becoming a public charge." The question was answered in the negative, by a reversal of the judgment of conviction and a dismissal of the information.

In this case, since the defendant husband obtained a valid decree of separation dated March 9, 1943, which specifically relieved him of further support and maintenance of his wife, he was relieved of that duty and could not be a disorderly person for failure to perform a duty to support that no longer existed. Therefore, the defendant became absolved from his duty to pay for his wife's support subsequent to March 9, 1943; he should be released from probation which has been imposed for that purpose. Of course, this defendant is still obliged to pay for the support of his wife before March 9, 1943, and she may enforce her right thereto by any appropriate remedy she may select.

But, here, no appeal was taken from the judgment of the Justice of the Peace. (See Code Crim. Pro. § 764.) This court cannot review that judgment, save upon appeal. (Code Crim. Pro. § 749.)

The defendant would have this court act pursuant to the procedure prescribed and the powers conferred upon it by sections 909 to 911 of the Code of Criminal Procedure. These sections contemplate a defendant in actual custody under a judgment. " They authorize the County Court, in consideration of the circumstances, to discharge the defendant absolutely

or on parole under a probation officer, or upon giving security, or, if a minor, to have him bound out, or, if of age, to authorize a contract for his service, under control, or to be kept in jail. But they neither directly nor inferentially authorize the County Court to disturb the terms of the judgment itself." (*People ex rel. Gottehrer* v. *Wiesendanger,* 179 App. Div. 124.) Therefore, this court lacks the power to grant the relief requested by the petitioner. His relief should be sought in the first instance by application to the court that rendered the judgment of conviction and probation.

This opinion has been written to lend light where there was darkness and to lubricate the wheels of justice.

Motion denied, without costs. Prepare and submit order accordingly.